RECEIVED

JAN 1 1 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **ANTHONY RICK BRILEY** | **CIVIL ACTION NO. 05-1855** |
| **VS.** | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Born on December 1, 1958, Anthony Rick Briley ("Briley") is a 47-year-old claimant with a high school education. (Tr. 14). Briley has worked in the past as a welder in the offshore industry. (Id.). Briley alleges that he has not worked October 3, 1998, the date he was injured in a workplace accident. Briley alleges that he was picking up a 6-inch pipe when he felt a pop in his low back area. (Tr. 150). Briley underwent surgery on his back in April 1999, as well as a left carpal tunnel release procedure on October 19, 1999. Since that time, Briley has consistently complained of back pain and residual left arm and neck pain.

On April 20, 2004, Briley filed an application for disability insurance benefits, alleging disability as of October 3, 1998, the day he was injured. The application was denied initially and on reconsideration, and an administrative hearing was held on June 28, 2005. In an opinion dated July 29, 2005, the ALJ found that Briley retains the residual functional capacity to perform a full range of sedentary work activity. (Tr. 19). The Appeals Council denied review, (Tr. 4-6),

making the ALJ's decision the final decision of the Commissioner from which Briley now appeals.

A review of Briley's wage records shows that he was insured for disability benefits through December 2003. (Tr. 56-57). In order to obtain disability insurance benefits under Title II of the Act, Briley must show that he was disabled on or before the expiration date of his insured status. 42 U.S.C. §§423(a)(6) and 416(I)(3); see also Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); Ivy v. Sullivan, 898 F.2d 1025 (5th Cir. 1990) (claimant bears the burden of establishing a disabling condition before the expiration of her insured status); 20 C.F.R. §404.320 (2002). Thus, to be entitled to disability insurance benefits, Briley must establish disability prior to December 31, 2003.

## *Assignment of Errors*

Briley raises three errors on appeal: (1) The ALJ erred in assessing his residual functional capacity, resulting in a misapplication of the Medical-Vocational Guidelines to find him not disabled; (2) the ALJ failed to give proper weight to his treating physician's opinion; and (3) the ALJ erred in relying upon the testimony of the vocational expert in finding him not disabled at Step 5.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that Briley suffers from the severe impairments of chronic neck and back pain, but that he retains the residual functional capacity to perform a full range of sedentary work. (Tr. 19). Nevertheless, the ALJ also called a vocational

expert to testify at Briley's hearing for the purpose of determining whether Briley can make an adjustment to work in spite of his medical limitations. Based upon the testimony of the vocational expert, which was based upon job descriptions as set forth in the Census Code, the ALJ determined that there are jobs that Briley can do.

After careful consideration of the record, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.

1.  **Medical History**

In April 1999, following his workplace injury on October 3, 1998, Briley underwent a C5 through T1 bilateral decompressive laminectomy with left C7 root foraminotomy, a left C8 root foraminotomy with excision of a large free fragment of disc at the left C7-T1 level, and a lesser C6 root foraminotomy. (Tr. 102-10). This procedure was performed by Dr. Patrick A. Juneau, III, a neorusurgeon. After the surgery, Briley continued to complain of numbness and tingling sensations in his left arm and hand. (Tr. 130). At that time, Dr. Juneau opined that Briley was not capable of doing *any* work. (Id.).

On June 16, 1999, Dr. Juneau reported that Briley had some "intrinsic injury within the nerve roots." (Tr. 126). On September 16, 1999, Briley continued to complain of persistent numbness and tingling in his left hand, with a positive Tinel's sign[1] over the left carpal tunnel.

---

[1] Tinel's sign is defined by MedicineNet.com as follows:

> An examination test that is used by doctors to detect an irritated nerve. Tinel's sign is performed by lightly banging (percussing) over the nerve to elicit a sensation of tingling or "pins and needles" in the distribution of the nerve. For example, in a person with carpal tunnel syndrome where the median nerve is compressed at the wrist, Tinel's sign is often "positive" and causes tingling in the thumb, index, and middle fingers.

Dr. Juneau discussed the possibility of a left hand carpal tunnel release with Briley at that time, (Tr. 124), a procedure that was ultimately performed on October 19, 1999.

Following this procedure, Briley continued to complain of residual neck and left arm pains, including numbness and tingling. (Tr. 115-50). On February 8, 2000, Dr. Juneau stated that "the highest level of work function that Mr. Briley could do would be sedentary work and I think that would need to be a permanent restriction." (Tr. 115).

On February 18, 2000, Dr. Juneau reported the following:

> I think from this point forward Mr. Briley needs to be restricted from doing any sort of heavy duty work, medium duty work or even light duty work. I think that Mr. Briley will need to be restricted to a sedentary work level from this point forward as a permanent restriction. *If a compatible sedentary job is not found for Mr. Briley, then I think he should be placed on permanent full disability.*

(Tr. 115) (emphasis added).

The record shows a large unexplained gap in treatment between 2000 and 2003. On July 1, 2003, Briley was evaluated by Dr. Carolyn Y. Smith, a pain management specialist. In her initial report, Dr. Smith stated that Briley had a "slightly antalgic" gait,[2] with decreased weight bearing on his left side. (Tr. 182). Dr. Smith also reported that Briley had difficulty performing repeated heel toe raises and deep knee bends on the left, and that range of motion of his lumbar spine was limited to approximately 60 degrees of forward flexion. (Id.). Briley also had tenderness on palpation of his mid- and low-lumbar spine, bilateral iliolumbar ligamentous region, and bilateral gluteal muscles, greater on the left side than the right. Briley's range of

---

[2] "Antalgic gait" is defined as "a limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side." http://www.medical-dictionary.com.

motion of his cervical spine was restricted in all places, and he had tenderness to palpation of his bilateral upper trapezius muscle, bilateral periscapular muscles, and over his low cervical spine. (Id.). Range of motion of Briley's bilateral upper extremities was limited to approximately 120 degrees of forward flexion and was painful. Dr. Smith diagnosed Briley with failed back and neck syndrome with chronic pain, and ordered x-rays and MRIs. (Id.).

The results of the tests were as follows: Cervical spine x-rays completed at University Medical Center in August 2003 showed degenerative disc disease with disc space narrowing at L3-4, L4-5, and L5-S1 with marginal spondylosis. Slight scoliotic deformity was also seen to the right of L4-5. (Tr. 169). A cervical MRI done in November 2003 showed mild to moderate cervical spondylosis with a posterior central disc protrusion causing moderate central canal stenosis at C3-4, and diffuse bilateral neuroforaminal narrowing throughout the cervical spine, with the most severe levels being the right neuroforamen at C4-5 and bilateral neuroforamina at C6-7 and C7-T1. (Tr. 164). A lumbar MRI done in December 2003 showed prominent epidural fibrotic scarring changes at L5-S1, prominent disc bulges and hypertrophic changes at L2-L3, resulting in mild central spinal stenosis, and moderately prominent disc bulges at L1-L2, L3-L4, and L4-L5. (Tr. 168).

On April 6, 2004, Dr. Smith reported that Briley was still experiencing muscle spasms, and that range of motion in his cervical spine was functional, but painful on rotation and lateral bending to the right. (Tr. 178). In July 2005, Dr. Smith reported that Briley was being treated for failed neck syndrome with chronic pain, and was being prescribed Lortab for severe pain and Soma for muscle spasms. Dr. Smith stated the following:

> Even though patient remains ambulatory, activities increase his pain requiring breaks at least every two hours and occasionally requiring relative rest, remaining

in bed until exacerbations are over. *I do not feel the patient is capable of competing in the open market for any reasonable work.*

(Tr. 193) (emphasis added).

## 2. Residual Functional Capacity and Use of the Medical-Vocational Guidelines

Briley contends that the ALJ erred in assessing his residual functional capacity, resulting in a misapplication of the Medical-Vocational Guidelines to find him not disabled. The ALJ concluded that Briley is restricted from lifting objects weighing more than ten pounds and from standing or walking for more than two hours in an eight-hour workday and can perform a full range of sedentary work with no limitations. (Tr. 17). The ALJ then consulted the Medical-Vocational Guidelines and determined that, under Rule 201.21, Briley is not disabled. Nevertheless, the ALJ called a vocational expert at Briley's administrative hearing for the purpose of assisting "in the resolution of whether or not the claimant could make an adjustment to work in spite of his medical limitations on or before December 31, 2003." (Tr. 18).

First, the undersigned concludes that there is no substantial evidence for the RFC finding of the ALJ. "Sedentary work" is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967.

The undersigned concludes that, in making his RFC finding, the ALJ did not take into account the level of Briley's pain. The record shows that Briley has been treated by Dr. Smith for pain consistently since 2003, and that she continues to report that he has chronic pain

syndrome. Briley has been diagnosed with degenerative disc disease with disc space narrowing at L3-4, L4-5, and L5-S1 with marginal spondylosis, as well as mild to moderate cervical spondylosis with a posterior central disc protrusion causing moderate central canal stenosis at C3-4. Dr. Smith has reported that Briley has muscle spasms, which she treats with Soma, and that he she has prescribed Lortab, a powerful narcotic medication, for pain. Dr. Smith has also reported that Briley needs frequent breaks during the day to lie down to deal with his pain. The vocational expert who testified at Briley's hearing stated that a hypothetical claimant who takes Lortab and Soma for pain and needs to lie down every twenty minutes or so would not be able to find or keep employment. (Tr. 229-30).

Here, the ALJ concluded that Briley has "an impairment that was reasonably expected to produce the type of pain alleged," but that his complaints of pain are not credible given his testimony concerning his activities of daily living. (Tr. 16). Briley testified that he is driven to the grocery store once a week, and that his shopping takes 30-40 minutes; that he can ride a lawn mower for thirty minutes at a time before having to get off and take a break due to back pain; and that he can prepare his own meals two to three timer per week. (Tr. 211-15).

Despite finding that Briley's impairments can be expected to cause pain, the ALJ concluded that Briley can perform a full range of sedentary work, with no limitations on his functional capacity due to pain. The undersigned concludes that the record does not support this conclusion.

Furthermore, the ALJ erred in applying the Medical-Vocational Guidelines to direct a conclusion because Briley has non-exertional limitations, including pain. The Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 ("the Grid"), are an appropriate

shortcut at the fifth step only if a nonexertional impairment, such as pain or a psychological disorder, does not significantly affect the claimant's range of work ability. Marcotte v. Callahan, 992 F.Supp. 485, 493 (D.N.H.,1997), citing Ortiz v. Secretary of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989). It is well-settled that pain may constitute a non-exertional impairment that limits the range of jobs a claimant otherwise would be able to perform. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987), citing Carter v. Heckler, 712 F.2d 137, 141-42 (5th Cir.1983). See also Social Security Ruling ("SSR") 96-8p.[3] When pain is treated as a nonexertional factor, it need only be shown to have significantly narrowed the spectrum of jobs within a particular exertional category for which the claimant would otherwise qualify. Dellolio, 705 F.2d at 127, citing Gagnon v. Secretary of Health and Human Services, 666 F.2d 662 (1st Cir.1981). Because he failed to consider Briley's pain as a functional limitation on this ability to work, the ALJ erred in applying the Medical-Vocational Guidelines to conclude that Briley is not disabled.

Furthermore, as stated previously, Briley takes Lortab and Soma for pain and muscle spasms. Briley testified that these medications impair his concentration and make it necessary for him to lay down frequently because he is drowsy.

Social Security Ruling 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. See Brown v.

---

[3] Social Security Rulings are issued by the Social Security Administration and are based on case decisions made at the administrative levels of adjudication, federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, and other policy interpretations of the law and regulations. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration, in accordance with Section 422.406(b)(1) of the Social Security Regulations No. 22 (20 CFR Part 422), and are to be relied upon as precedents in adjudicating other cases.

Barnhart, 285 F.Supp.2d 919, 935 (S.D.Tex. 2003), citing SSR 96-7p; see also 20 C.F.R. §§404.1529(c)(3)(iv), 416.929(c)(3)(iv). Pursuant to Social Security Ruling 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication."

In order to be capable of engaging in substantial gainful activity, a person must have a realistic chance of both obtaining as well as holding a job in a *realistic* work setting:

> In [Wingo v. Bowen, 852 F.2d 827 (5th Cir.1988)], this Court held that a determination that a person is capable of engaging in substantial gainful activity depends on a finding not only that the individual has some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance, "once hired, of keeping the job." *Id.* at 831. We noted that "[a] claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which all people work in the real world." *Id.* (*citing* Allred v. Heckler, 729 F.2d 529, 533 (8th Cir.1984)).

Watson v. Barnhart, 288 F.3d 212 (5th Cir. 2002).

After review of the record, the undersigned concludes that the ALJ did not properly consider the side effects of Briley's medication on his ability to hold a job in a realistic work setting. The ALJ's ruling does not specifically discuss Briley's medications and the fact that they impair his concentration. It is uncontroverted that Briley takes Lortab to control his pain. Lortab has well-documented side-effects, including drowsiness.

Furthermore, the ALJ ignored the testimony of the VE, who stated that an individual with Briley's limitations, as well as the added limitations of narcotic medications that make him drowsy and impair his concentration, would render Briley unable to hold any job. (Tr. 179). In

giving no weight to this testimony, the ALJ failed to address the important issue of how Briley is supposed to hold a job if the medication he takes for his pain impairs his concentration.

3. **Opinion of Treating Physician**

Briley contends that the ALJ failed to give proper weight to the opinions of Dr. Smith. The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000), citing Leggett v. Chater, 67 F.3d 558, 566 (5th Cir.1995); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight *if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence."* Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995), citing 20 C.F.R. §404.1527(d)(2)). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts only where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. See, e.g., Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994).

In the instant case, Briley acknowledges that Dr. Smith's opinion that Briley cannot work is not entitled to any special weight, but contends that the physical limitations that she placed on Briley are entitled to great weight. Dr. Smith reported that Briley's pain requires breaks at least every two hours and occasionally requires remaining in bed until exacerbations are over. (Tr.

193). In his decision, the ALJ mentions the report of Dr. Smith, but does not indicate the weight given to Dr. Smith's opinions.

The record shows that Dr. Smith's opinion is largely consistent with the medical evidence in the record. X-rays and MRIs show that Briley had, during the relevant time period, degenerative disc disease with disc space narrowing at L3-4, L4-5, and L5-S1 with marginal spondylosis; scoliotic deformity; mild to moderate cervical spondylosis with a posterior central disc protrusion causing moderate central canal stenosis at C3-4; diffuse bilateral neuroforaminal narrowing throughout the cervical spine with the most severe levels being the right neuroforamen at C4-5 and bilateral neuroforamina at C6-7 and C7-T1; prominent epidural fibrotic scarring changes at L5-S1; prominent disc bulges and hypertrophic changes at L2-L3, resulting in mild central spinal stenosis; and moderately prominent disc bulges at L1-L2, L3-L4, and L4-L5. (Tr. 164-8). The ALJ's decision completely ignores these 2003 diagnostic test results, all of which support Briley's continued complaints of pain and Dr. Smith's resulting limitations on his physical activities.

Dr. Smith's opinions are also largely consistent with those of Dr. Juneau, who stated that Briley can only do sedentary work that incorporates his particular limitations, hence the necessity for a "compatible" sedentary job. (Tr. 115). Dr. Juneau stated that if a compatible sedentary job is not available, he, too, believes that Briley should be considered permanently disabled. (Id.).

Considering the foregoing, the undersigned concludes that the ALJ did not have good cause for discounting the weight of Dr. Smith's opinions regarding Briley's physical limitations,

inasmuch as her opinions are not conclusory and are supported by the evidence in the record. Therefore, the undersigned concludes that the ALJ erred in discounting Dr. Smith's opinions.

### 4. Testimony of the Vocational Expert

Although he utilized the Medical-Vocational Guidelines to determine that Briley is not disabled, the ALJ also consulted a vocational expert at Briley's administrative hearing. The ALJ questioned the VE about whether a hypothetical claimant of Brtiley's age and educational level, with the following limitations, can do any type of work: can lift 10 pounds occasionally, 10 pounds frequently; can stand or walk no more than 2 hours in an 8-hour workday; can sit 6 hours in an 8-hour workday; has no ability to climb ropes, ladders, or scaffolds; cannot do frequent upper or lower push/pull work; can operate machinery such as a riding lawnmower for one half-hour at a time; can do no frequent stooping, crouching, squatting, kneeling, or crawling; has some limited sensation in his left fingertips but can still grasp and turn his left hand; and has use of some of his fingers in his left hand for such fingering as would be needed in a two-handed job, but does not have full dexterity of the left hand. (Tr. 223-24). The VE testified that such a hypothetical individual could work as a shipping and receiving clerk; an office clerk; and a cashier. (Tr. 224-25, 227). When Briley's counsel added the limitation that this hypothetical claimant takes Lortab and Soma for pain and needs to lie down every twenty minutes or so, the VE testified that there would be no jobs for such a hypothetical claimant. (Tr. 229-30).

In his decision, the ALJ states that the VE's testimony is consistent with the Dictionary of Occupational Titles ("DOT"), SSA's preferred publication for the classification of jobs and job requirements. (Tr. 18). However, review of the record shows that all of the jobs cited by the VE are from the Census Code, not the DOT, and that the ALJ did not specifically question the

VE at the hearing concerning whether his testimony was consistent with the DOT as he was required to do under Social Security Ruling 00-4p. In SSR 00-4p, the Secretary set forth the SSA's policy of preferring the DOT over other publications:

> In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.
>
> [. . .]
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. *When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.*

SSR 00-4p (emphasis added).

Review of the transcript of the administrative hearing shows that the ALJ did *not* inquire as to whether there was consistency between the VE's testimony and the DOT concerning appropriate jobs for Briley. Furthermore, the jobs cited by the VE from the Census Code do, in fact, conflict with those in the DOT.

The job of shipping/receiving clerk (DOT 222.387-050) cited by the VE is actually a skilled, medium-level job, while a general office clerk job (DOT 209.562-010) is a light job that requires frequent reaching, handling, and fingering. While there are five cashier jobs listed in the DOT, only one of them is a sedentary job (211.362-010), but it is a skilled position that requires frequent or constant handling, reaching, and/or fingering. Thus, even according to the ALJ's own limitations accorded Briley concerning his limited ability to use his left hand and his overall limited dexterity, it is clear that Briley is unable to perform any of the jobs listed by the

VE at the administrative hearing. Therefore, to the extent that the ALJ relied upon the testimony of the VE in finding that Briley is not disabled, such reliance was erroneous.

## *Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **REVERSED** and that Briley be awarded disability benefits consistent with an onset date of October 3, 1998.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on January 11, 2007.

COPY SENT:
DATE: 1/11/07
BY: CW
TO: Nem
RFD

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)